**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CATHOLIC LEGAL IMMIGRATION NETWORK, INC. (CLINIC), AFRICAN COMMUNITIES TOGETHER, AGNES KYEREMAA, PATRICIA RICHARDSON, CESAR ANDRED AGUIRRE, MARU MAHMUD HASSEN, MUNTHAZ MAHMUD HASSEN, ADRIAN MITCHELL, JUAN DAVID BUITRAGO CAGUA, ALEJANDRA ALCENDRA MOSCOTE, ANDRES ALFONSO MEDINA RAMIREZ, FERNANDO LIZCANO LOSADA and LINA MARGARITA ANGULO PEÑARANDA

Plaintiffs,

-against-

MARCO RUBIO, in his official capacity as Secretary of State, and the UNITED STATES DEPARTMENT OF STATE,

Defendants.

Case No. 1:26-CV-00858-JAV

**DECLARATION OF JOHN ARMSTRONG**

I, John Armstrong, hereby declare under penalty of perjury:

1. I am employed as the Principal Deputy Assistant Secretary within the U.S. State Department's Bureau of Consular Affairs. The Bureau of Consular Affairs' Visa Office provides guidance to U.S. embassies and consulates around the world on a broad range of policy and procedural issues related to the adjudication of visa applications.

2. This Declaration is being submitted in support of the Defendants' Motion to Stay the Court's August 21, 2026 Opinion and Order, Doc. No. 83, granting in part and denying in part the parties' motions for partial summary judgment.

3. The statements made in this Declaration are based on my personal knowledge and information made available to me in the course of my official duties.

4. On January 14, 2026, the Department of State transmitted a cable to all diplomatic and consular posts titled "Pausing Immigrant Visa Issuances for Nationalities at High Risk of Public Charge." The cable provided information on ongoing efforts by the Department to review all policies, regulations, and guidance "to ensure the highest level of screening and vetting of every visa applicant." The cable instructed consular officers to refuse under Section 221(g) of the Immigration and Nationality Act all immigrant visa applicants who have not been refused under another ground of ineligibility if the applicant is a national of one of 75 listed countries. The cable further explained that, as part of this review, "in order to ensure robust enforcement of all U.S. immigration laws," the Department was directing this action based on indication of nationals from these countries having sought public benefits in the United States, "and in order to allow the Department to evaluate and enhance screening and vetting procedures and guidance related to the public charge ground of ineligibility."

5. The guidance announced in the January 14, 2026, cable was one of several actions undertaken by the Department of State to ensure that visa applicants underwent comprehensive screening and vetting prior to visa issuance, including vetting for potential ineligibility under the public charge ground of inadmissibility in 8 U.S.C. 1182(a)(4). For example, on November 6, 2025, the Department of State issued a cable to all diplomatic and consular posts titled "Properly Implementing the INA 212(a)(4) Public Charge Ineligibility," reminding consular officers to "conduct a comprehensive and thorough vetting of visa applicants, considering all relevant factors and the totality of the applicant's circumstances." This cable also noted that, at the time,

the Department was "reviewing other policies and procedures related to public charge ineligibility...and will continue to update the field as these evolve."

6. The Department's public-charge screening efforts also include planned revisions to the visa medical examination forms — Forms DS-2054, DS-3025, DS-3026, DS-3030, and DS-7794 — which are among the significant changes strengthening the Department's public charge inadmissibility analysis under INA § 212(a)(4)(A). These revised forms will add new fields designed to give consular officers the medical information needed to conduct a more rigorous public charge analysis of each visa applicant. This reflects a broader line of effort that uses existing data-collection instruments to better operationalize the public charge ground of inadmissibility, consistent with the Administration's stated goal that no taxpayer-funded benefits go to aliens immigrating to or visiting the United States — the same underlying concern that led the Department to issue the January 14, 2026, guidance pausing immigrant visa issuance for nationals of 75 countries.

7. To address deficiencies described in the January 14, 2026 cable, the Bureau of Consular Affairs has begun to deploy updated training and adjudication tools—and begun efforts towards planned medical examination form revisions described above—including launching a global training initiative for consular sections to complete new training on applying the public charge ground of inadmissibility. This includes the rollout of new adjudicatory tools and guidance to assist consular officers in assessing whether, in the totality of the circumstances, a visa applicant is likely to become a public charge and therefore ineligible for a visa under 8 U.S.C. 1182(a)(4), among other efforts. The continuing and upcoming additional training of consular officers is the next step in this initiative, in addition to updating certain forms to ensure that consular officers have information necessary to determine whether an applicant is likely to

become a public charge. These efforts remains ongoing, as noted in Department guidance implementing the Court's Order, and unless and until it is complete, consular officers continue to face the same information gaps that originally warranted the issuance of the guidance on January 14, 2026. The Department depends on its ability to issue timely, uniform screening and vetting instructions to consular officers worldwide so that similarly situated applicants are evaluated consistently across posts; the ongoing training and tools rollout is part of that effort. If the Court's Order is not stayed during the pendency of the appeal, consular officers may need to adjudicate immigrant visa applications from nationals of the affected countries—including cases remanded under the Order—before the Department has completed its efforts to close the gaps described above in assessing whether applicants are likely to become a public charge.

8. I understand that the district court's Order applies not only to the individual Plaintiffs in this action, but also to all applicants who were previously refused visas solely pursuant to this policy, specifically setting aside and vacating those refusals and remanding those agency actions for further consideration. These requirements are included in Department cable guidance implementing the Order to all diplomatic and consular posts, and directing consular officers to identify immigrant visa applications previously refused solely under the IV pause and reconsider those applications. Based on information provided to me from the Bureau of Consular Affairs, over 43,000 immigrant visa applications were refused solely pursuant to this guidance and are therefore subject to the Court's vacatur and remand order. Reconsideration of these remanded cases requires consular officers to re-review applicants' files, request updated documentation where expired, potentially schedule a new interview if required in the consular officer's discretion, and issue a new determination. Because consular sections have finite interview appointment capacity, this reallocation necessarily diverts the Department's consular

adjudication and security-vetting resources away from other classes of applicants whose cases have been pending for a comparable or longer period, or who face statutorily imposed deadlines to establish eligibility, delaying adjudication of those cases and straining the Department's limited staff and resources, pending resolution of the government's appeal.

9. Finally, if the judgment remains unstayed during the pendency of the appeal, consular officers may issue immigrant visas to some number of applicants whose refusals are vacated under the Court's Order, and some of those applicants may be admitted to the United States as lawful permanent residents before the appeal is resolved. Some of these adjudications may occur before the Bureau of Consular Affairs completes the training initiatives described above, which could mean consular officers would be adjudicating those cases without the benefit of the enhanced information collections intended to inform the assessment of whether an applicant is likely to become a public charge. Absent those enhanced procedures, consular officers adjudicating these remanded cases could be relying on many of the same tools and information the Department had already determined, prior to January 14, 2026, were insufficient to reliably identify applicants likely to become a public charge—including versions of the medical examination forms (DS-2054, DS-3025, DS-3026, DS-3030, and DS-7794) that do not yet include the additional fields described in Paragraph 6. As a result, it is possible that some number of applicants who would otherwise have been found ineligible on public charge grounds may instead be issued visas, under existing procedures.

10. If an immigrant visa is issued and the holder is admitted to the United States as a lawful permanent resident, removal of that individual from the United States would generally require the government to initiate removal proceedings, which are separate, resource-intensive, and not a certain avenue for restoring the pre-issuance status quo, even if the Government

ultimately prevails on appeal and the January 14, 2026, guidance is reinstated. The Department's transmission of guidance implementing the Court's Order operationalizes compliance with the remand of cases, but does not resolve the substantive training and adjudicatory-tool gaps described above, which the cable itself acknowledges remain ongoing. This harm is compounded by the fact that, as I understand, lawful permanent residents generally may be eligible for certain forms of government support in the United States. As a result, consistent with the information in the January 14, 2026, cable that nationals from the 75 countries have sought public benefits in the United States at high rates, it is possible that some number of applicants who would otherwise be found ineligible on public charge grounds following the updates to training and adjudication tools may instead be issued visas and may obtain public benefits in the United States – the precise harm that the January 14, 2026, guidance was designed to prevent. According to information cited by the January 14, 2026, guidance, for over 20 nationalities that were covered by the guidance, at least 50 percent of the immigrant households receive some form of public assistance, including nationals of several countries with notably high rates of immigration to the United States. These statistics indicate that consular screening for public charge ineligibility is likely deficient, necessitating the aforementioned updated training and adjudication tools. The planned revisions to the medical examination forms described in Paragraph 6 are also intended, in part, to help consular officers identify health-related factors bearing on the likelihood that an applicant will rely on public benefits after admission — information that is not currently fully captured on the forms in their present form. Even if the U.S. government were to seek removal of the individuals in accordance with U.S. law, any such support extended in the interim is not easily or readily recovered by the government through existing mechanisms, even if the individual is ultimately removed from the

United States. This harm which, as I understand, extends to use of federal and state resources that support many U.S. public benefit programs, cannot be fully undone or addressed without expending significant additional resources through after-the-fact enforcement. This risk of irreversible harm exists independent of, and in addition to, the operational and resource considerations described above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge. Executed September 11, 2026.

John Armstrong
Principal Deputy Assistant Secretary
Bureau of Consular Affairs
United States Department of State.